IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 17-04091-01-CR-C-SRB |
| **BRANDON DAVID CUDDIHE**, | |
| Defendant. | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Timothy A. Garrison, the United States Attorney for the Western District of Missouri and undersigned counsel, respectfully submits this sentencing memorandum in the above captioned matter, set for a sentencing hearing on May 9, 2019. For the reasons set forth below, the Government recommends that the Court sentence the defendant, Brandon David Cuddihe, to 360 months' imprisonment on Counts 1 and 2 to be served concurrently and lifetime supervised release.

### I. BACKGROUND

On October 16, 2018, Cuddihe pled guilty to two counts of a 7-count Indictment. Count 1 and Count 2 charged attempted production of child pornography, both in violation of 18 U.S.C. § 2251(a). Cuddihe agreed to the following facts:

> On December 5, 2016, a Sedalia Police Detective (the Detective) took a complaint from a mother and her 10-year-old daughter, FV2. The mother stated that, upon waking up that morning, she checked FV2's phone only to find that FV2 had been in contact with a girl named "Hanna Richards" on Facebook Messenger, and had found where FV2 had sent nude pictures and videos to "Hanna Richards." After reading further into the conversation, the mother additionally found where FV1 and another minor female, both friends of FV2, had also been involved. The girls had all spent the night together over the weekend.

The Detective had FV2 and her mother log into FV2's Facebook account at that time. The messages between FV2 and "Hanna Richards" began on December 3, 2016. The Detective was able to view nude images and videos that FV2 sent to "Hanna Richards" at Richards' request. Richards purported to be a 14-year-old girl. The Detective took screen shots of all communications between FV2 and Richards, and saved all the videos and images that were sent and received during their conversation.

On that same day, the Detective interviewed FV1, also 10 years old, in the presence of her mother. During this interview, FV1 reported sending and receiving nude images and videos to "Hanna Richards" via Facebook Messenger. The Detective asked FV1 to log into her Facebook account so she could review the conversation. FV1 and Richards began having a conversation on December 1, 2016, where Richards also purported to be a 14-year-old girl. The conversation continued through December 2, 2016, and Richards asked FV1 for nude pictures of herself as well as her younger sister. The Detective was able to view nude videos and images of FV1 that she had sent to Richards via Facebook Messenger.

On December 6, 2016, the Detective applied for search warrants for "Hanna Richards," FV1's, and FV2's, Facebook accounts. The Detective obtained results from Facebook on January 9, 2017. "Hanna Richards" had been conversing with well over 150 people, many of whom appeared to be between 11-15 years old. The results included still nude photos that had been exchanged between Richards, FV2 and FV1.

The Detective located an additional juvenile from Sedalia who had engaged in sending nude pictures to "Hanna Richards." The conversations took place on December 2, 2016, December 4, 2016, and December 5, 2016. This individual is referred to as FV3, and was born in 2002. Richards sent FV3 images of an exposed vagina and an exposed anus; FV3 sent Richards' images of her exposed vagina, anus and breasts. The Detective interviewed FV3 on January 18, 2017, while her mother was also present. FV3 admitted to exchanging nude pictures with "Hanna Richards" via Facebook Messenger, but she has since deleted them and blocked Richards.

A search of the American Registry for Internet Numbers (ARIN) online database for IP addresses used to log into the Facebook account for "Hanna Richards" revealed the IP addresses belong to Sprint. On January 9, 2017, the Detective issued a subpoena to Sprint requesting subscriber information for those IP addresses. Sprint responded that IP address 2600:1:c25f:39ff:e1ed:8a36:a9d8:ba71 (used to log into "Hanna Richards'" Facebook account on December 1, 2016, while chatting with FV1, on December 2, 2016, while chatting with FV3) and 2600:1:c170:b028:445e:4ae4:a9ac:4a37 (used to log into "Hanna Richards'" Facebook account on December 3, 2016, while chatting with FV1) belonged to Ashley Beach of New York. Sprint had 8 addresses listed for Ashley Beach

2

beginning on 2008 when the account was established. A query of CLEAR for "Ashley Beach" and "New York" identified an Ashley Beach residing at an address in Binghamton, New York.

The Detective contacted the Binghamton Police Department and the Broome County Sheriff's Office regarding Ashley Beach. The Broome County Sheriff's Office confirmed an Ashley Beach in their records system. The results received from Sprint included two phone numbers related to that account. The Detective ran the phone number that was provided by "Hanna Richards" to FV1 during their conversations through Facebook and got a hit on BRANDON DAVID CUDDIHE, who is listed as being in a relationship with Ashley Beach. A search for BRANDON CUDDIHE by Detective Green's dispatch showed the same address as Ashley Beach in Binghamton, New York.

An FBI Special Agent (SA) interviewed CUDDIHE on September 1, 2017. CUDDIHE told the SA that he has had a Facebook account in his true name, "BRANDON CUDDIHE," for approximately 3-4 years. CUDDIHE also has a Snapchat account and had a Skype account at one point. CUDDIHE provided the same cell phone number provided by "Hannah Richards" to FV1. CUDDIHE stated he left his cell phone, a Samsung Galaxy S6, in a cab approximately one year ago, in either the spring or summer of 2016. CUDDIHE stated he did not change his phone number after the phone was lost. Initially, CUDDIHE denied knowledge of the Gmail account hannahbear3344@gmail.com or the Facebook account "Hannah Richards."

CUDDIHE stated he began working for Field Turf in July 2016, and that he travels a lot for his job. CUDDIHE traveled to Florida in December 2016 and June 2017 for work. When he is home, CUDDIHE resides with his girlfriend, Ashley Beach.

CUDDIHE eventually told the SA that he originally created the Facebook account with vanity ID "Hannah Richards" when he was traveling on the road for work and he was bored, lonely and looking for people to talk to him. CUDDIHE stated that, while traveling, he frequently drank alcohol. CUDDIHE stated he has a weird sexual interest that involves girls going to the bathroom and having accidents, related to urinating and defecating. CUDDIHE stated he attempted to converse online with individuals close to his age about his sexual interest but none were receptive. CUDDIHE stated he did not talk to his girlfriend about his sexual interest, but he suspects she may know about it. CUDDIHE stated he would not want to engage in that type of behavior with his girlfriend.

Using the "Hannah Richards" Facebook account, CUDDIHE would pick a random individual to befriend. CUDDIHE would go through all of their friends and "add" a bunch of their friends to his friends list. If an individual accepted his friend request, then he would begin chatting with them through Facebook Messenger. CUDDIHE initially told the SA the girls he was chatting with on Facebook

Messenger told him they were 16-17 years old. After being shown print outs from "Hannah Richards'" Facebook Messenger chats where multiple individuals told "Hannah Richards" they were 10-14 years old, CUDDIHE indicated he recalled having those communications.

The SA showed CUDDIHE the chats between "Hannah Richards" and FV1, FV2 and FV3. Though CUDDIHE did not initially recognize the names of the individuals, CUDDIHE recognized the chats as ones he engaged in with the minor females. CUDDIHE recognized the images within the chats as ones he sent and received while utilizing the Facebook identity of "Hannah Richards." CUDDIHE stated he obtained the images he sent as "Hannah Richards" from a website called www.onlyamateur.com. CUDDIHE took screenshots of images from that website in order to send them to the minor females he chatted with. CUDDIHE engaged in these conversations while he was in Florida for work in December.

CUDDIHE stated he never sent the images or videos he received from the minor females to anyone else. He stated he never told anyone else about his conversations online or about the existence of "Hannah Richards." CUDDIHE stated he was the only person who accessed the "Hannah Richards" account. CUDDIHE stated he made sure to log out of the "Hannah Richards" account when he came home so his girlfriend would not find out about it.

Chats

Count One- FV1

12/3/2016: "Hannah Richards"- "Can I see ur boobs baby"

12/3/2016: FV1- "Ya"

12/3/2016: "Hanna Richards"- "Video or pic?"

12/3/2016: FV1- "Which one you'll want?"

12/3/2016: "Hanna Richards"- "Video baby

12/3/2016: FV1- "ok"

12/3/2016: "Hanna Richards"- "And ur vagina please"

12/3/2016: FV1- "So naked?"

12/3/2016: "Hanna Richards"- "Yes ☐"

4

12/3/2016: FV1 sends a video of herself with no clothes on, her breasts and vagina are visible.

Count Two- FV2

12/4/2016: "Hanna Richards" "Can u do a naked video??"

12/4/2016: "Hanna Richards" "please baby"

12/5/2016: FV2 sends a video depicting her naked breasts and genitals

12/5/2016: "Hanna Richards" "Ur so sexy!!!!"

12/5/2016: FV2 "I'm tacking a bath"

The United States Probation Office calculated the Sentencing Guidelines as follows:

**Count 1: Attempted Production of Child Pornography**
| | |
|---|---|
| **Base Offense Level: § 2G2.1(a)** | **32** |
| **§ 2G2.1(b)(1)(A)** | **+4** |
| **§ 2G2.1(B)(6)(B)(ii)** | **+2** |
| **Adjusted Offense Level** | **38** |

**Pseudo Count 1A: Attempted Production of Child Pornography**
| | |
|---|---|
| **Base Offense Level: § 2G2.1(a)** | **32** |
| **§ 2G2.1(b)(1)(A)** | **+4** |
| **§ 2G2.1(b)(1)(A)** | **+2** |
| **Adjusted Offense Level** | **38** |

**Count 2: Attempted Production of Child Pornography**
| | |
|---|---|
| **Base Offense Level: § 2G2.1(a)** | **32** |
| **§ 2G2.1(b)(1)(A)** | **+4** |
| **§ 2G2.1(b)(1)(A)** | **+2** |
| **Adjusted Offense Level** | **38** |

**Multiple Count Adjustment**

| Group/Count | Adjusted Offense Level | Units |
|---|---|---|
| Count 1 | 38 | 1.0 |
| Pseudo Count 1a | 38 | 1.0 |
| Count 2 | 38 | 1.0 |
| | | |
| Total Number of Units: | | 3.0 |

| | |
|---|---|
| **Greater of the Adjusted Offense Levels Above:** | **38** |
| § 3D1.4 | +3 |
| **Combined Adjusted Offense Level** | **41** |
| | |
| **Chapter 4 Enhancement: § 4B1.5(b)** | **+5** |
| **Acceptance of Responsibility** | **-3** |
| | |
| **Total Offense Level:** | **43** |

With his Criminal History Category of I, this calculation results in an applicable Guidelines range of life. Cuddihe is also subject to a statutory minimum of 15 years on Counts 1 and 2. The Government recommends a sentence of 360 months on Count 1 and 360 months on Count 2 to be served concurrently for a total of 360 months as well as lifetime supervised release.

## II. DISCUSSION

Even after *United States v. Booker*, 543 U.S. 220 (2005), sentencing begins with a properly calculated advisory Sentencing Guidelines range, including any applicable departures. *See* United States Sentencing Commission, Guidelines Manual, § 1B1.1(a) and (b). The Court then must consider that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. USSG § 1.1B1(c).

The Supreme Court has observed that "in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives'." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). The Government submits that this case falls within that category of cases for which the Guidelines sentence is sufficient, but not greater than necessary, to meet the goals outlined in 18 U.S.C. § 3553(a). While 360 months is a significant sentence, given Cuddihe's conduct, it is a reasonable sentence, and is justified under § 3553(a) for the reasons set forth below.

A.    *Application of the § 3553(a) Factors*

    1.    **The History and Characteristics of the Defendant**

The defendant's history and characteristics are the first of the factors enumerated in 18 U.S.C. § 3553(a)(1). Cuddihe's history and characteristics shows that he has engaged in a hidden and double life.

On the outside, Cuddihe has maintained two long-term romantic relationships, maintained close familial relationships, obtained his GED, and has a strong employment history. (PSR ¶¶ 81-85, 96-98.) Cuddihe has a DWI conviction and possession of marijuana conviction from when he was 18 years old. Cuddihe plead guilty in 2014 to DWI in Broome County, New York. (PSR ¶¶ 71-73.) Despite this limited criminal history related to substance abuse, Cuddihe reports he consumes alcohol on the weekends and when he travels to work, and does not need additional substance abuse treatment. (PSR ¶¶ 92-95.) Traditionally, a limited criminal history and positive familial relationships would act as mitigating factors; however, this history offers no explanation for the calculated, systemic lack of humanity involved in the crimes to which Cuddihe has pled guilty.

On the inside lurks a man who has targeted dozens of prepubescent children in order to satisfy his sexual desires. Cuddihe has reported he has a sexual fetish where women "accidentally" defecating or urinating sexually arouse him. He reports he only can become aroused when the "accidents" are authentic. Cuddihe has used this "authenticity" as an excuse for why he targeted children ages 10-14. (For. Psych. Eval., pp. 7-8.). Cuddihe did not seek to satisfy these urges in an adult consensual relationship; rather, Cuddihe received sexual gratification from deceptively manipulating young children into producing child pornography. He hid this so well that his fianceé

7

with whom he lived indicated that she never "noted any behavior on his part that suggested that he had any sexual interest in children." (For. Psych. Eval., p. 6.)

### 2. The Need to Protect the Public from Future Crimes by the Defendant

The need to protect the public from the defendant's own future crimes, 18 U.S.C. § 3553(a)(1)(C), weighs strongly in favor of the 360 month sentence recommended by the Government. The defense argues that Cuddihe offers little future risk to the community by offering a Forensic Psychological Evaluation, which predicts a low risk for recidivism. The Government submits this evaluation does little to predict Cuddihe's future risk to the public.

Dr. Jeffrey S. Kline wrote his report after reviewing FBI case records, printouts from Cuddihe's facebook data, printouts from two of the victims in this matter, a draft copy of the plea agreement, a twenty minute phone call with Cuddihe's fianceé, and a three hour self-reported interview with the defendant. (For. Psych. Eval., p. 1.) In reaching his conclusions, Dr. Kline had access to all case materials with the addition of a three hour interview from the defendant, an interview Cuddihe provided knowing that Dr. Kline's report would be read by his sentencing judge. Cuddihe self-reported "no portion of his fetish involves children or teens. He stated in the past and the pornography that he has viewed that involve this fetish have always involved adult women." (For. Psych. Eval., p.7.) Cuddihe also self-reported "that an important component to the fetish is that the individual had an accident, and that this would be difficult two [sic] simulate in a relationship." (For. Psych Eval., pp. 7-8.) He also denied any sexual arousal to children or adolescent teenagers and stated he began to contact minors because, "they seemed more open to talking about it." Cuddihe also indicated that "it would be more logical that they might have accidents." (For. Psych Eval., p. 8.) Cuddihe went on to state, "[T]he sexual talk and requests for

8

images and video revolved around encouraging the victims to give him more information about having accidents as opposed to being sexually arousing on their own." (For. Psych. Eval., p. 9.)

Cuddihe's actions speak much louder than his self-serving interview with Dr. Kline. Throughout the Facebook messages, Cuddihe asked 10-year-old females, "Is ur pussy wet?", "video baby" and "and ur vagina please." The "Hanna Richards" Facebook account is over 2,000 pages long and is dedicated almost entirely to soliciting pornographic images from children. The only reason Cuddihe stopped using the "Hanna Richards" profile is because FV2's mother messaged that she was contacting the police. A person who is not aroused by children and adolescents does not manipulate children and adolescents into producing images and videos of their genitalia, of them masturbating, and of them engaging in humiliating acts of defecation and urination. Cuddihe's self-serving statements show that he is attempting to rationalize and mitigate his conduct as well as manipulate this Court in the same manner he manipulated his friends, family, employers and victims.

Dr. Kline employed the use of the Static 99R and Stable 2007 to determine Cuddihe's recidivism risks. The Static 99R placed Cuddihe in the average range for risk offenders and the Stable 2007 placed him in the low range for recidivism. The Static 99 testing protocols themselves acknowledge that the test "demonstrates only moderate predictive accuracy." *See* Amy Phenix *et al.*, Static-99R Coding Rules (revised Nov. 2016), available at http://static99.org/pdfdocs/Coding_manual_2016_v2.pdf (visited April 30, 2019), at 4. The test "does not include all the factors that might be included in a comprehensive risk assessment." *Id.* (citation omitted). Moreover, "[A]bsolute recidivism rates associated with specific risk scores have also been found to vary across samples in a way that has made estimation of absolute levels of recidivism more complex." *Id.* (citations omitted).

9

The Static 99 analysis also suffers from a fundamental limitation, as recognized by the Seventh Circuit Court of Appeals:

> Estimates of recidivism are bound to be too low when one is dealing with underreported crimes such as sex offenses. Static 99 treats as a recidivist only someone who is *convicted* of a further sex offense, but the recidivism concern is with someone who commits a further offense, whether or not he is caught— yet if he is not caught, his subsequent crime does not affect the data on which the Static 99 calibrations are based.

*United States v. McIlrath*, 512 F.3d 421, 425 (7th Cir. 2008) (emphasis retained).

Unsurprisingly, experts have warned against relying on actuarial scoring like Static 99 to draw conclusions about the risk posed by any individual defendant. *See* Ryan Hall *et al.*, *A Profile in Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, 82 Mayo Clinic Proc. 457, 467 (2007) ("Several actuarial and self-report tests have been designed to help physicians and law enforcement officers predict which individuals are at higher risk for repeated offense, but currently no single test or combination of tests can accurately identify the future activity of an individual") (*citing* Static 99 scoring, among many others). Cuddihe's Static 99 score does not establish with any reliability that he will not pose a danger when released back into the community.

The safety of the public demands that the Court impose a significant sentence and weighs in favor of the 360 month recommended sentence in this case.

### 3. The Nature and Circumstances of the Offenses

The nature and circumstances of the offenses of conviction, 18 U.S.C. § 3553(a)(1), as well as the need for the sentence to reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the offenses, 18 U.S.C. § 3553(a)(2)(A), and the need to deter

other criminal conduct, 18 U.S.C. § 3553(a)(2)(B), all weigh in favor of the Guidelines-range sentence that the Government recommends.

Cuddihe invaded the safety and security of countless homes when he utilized Facebook Messenger to prey on innocent children. Cuddihe developed a premeditated and calculated scheme for which alcohol consumption is not to blame. Cuddihe cultivated a persona that he envisioned would be trustworthy for children to confide in and feel comfortable sending him pornographic and humiliating images. Cuddihe scoured the internet for a profile picture, making sure he found an attractive young girl. In some cases, Cuddihe redistributed identified victim K.R.'s images in order to convince other children to produce child pornography. When Cuddihe targeted a 10-year-old, "Hanna Richards" would be a 13 or 14 year old female so as to be more approachable. When he targeted a 14-year-old, "Hanna Richards" would suddenly become 16, slightly older and more sophisticated, but still a peer. Cuddihe would befriend a number of people on a targeted victim's "friends" list in order to make the victim feel more comfortable accepting "Hanna's" friend request. Cuddihe would then chat with a victim and coerce them into sending a pornographic photograph. Cuddihe made contact with approximately 150 females, many of them minors. Three victims resided in the Western District of Missouri and the FBI was able to identify and interview an additional 8 victims. FV1 (age 10), FV2 (age 10), FV3 (age 14), S.C. (age 14), S.S. (age 12), B.M. (age 16), S.S. (age 11), B.M. (age 14), H.W. (age 11), K.R. (age 14) and S.M. (age 14) are all real children who believed they were speaking with a peer and had no idea they were being exploited. The amount of shame, confusion, trauma and pain that results from discovering an adult male was abusing one's trust and innocence for his own sexual needs is unimaginable.

The risk and danger posed by Cuddihe's conduct warrants imposition of a sentence of 360 month sentence and lifetime supervision.

### 4. The Need to Avoid Unwarranted Sentencing Disparities

Uniformity in sentencing among similarly-situated defendants is also an important element of sentencing, 18 U.S.C. § 3553(a)(6), and in general, this factor weighs in favor of a 360 month sentence, since the Court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" when calculating and reviewing the Guidelines range. *Gall v. United States*, 552 U.S. 38, 54 (2007). On December 14, 2018, this Court sentenced a similarly situated defendant to 360 months on Count 1 and 240 months on Count 2, concurrent to one another, and lifetime supervision in *United States v. Genard Alonzo Toney* (17-03135-01-CR-SW-SRB, D.E. 36). In that case, Toney held himself out to be adult female and contacted women through a dating website in order to attempt to receive child pornography from various women. Like Cuddihe, Toney assumed the identity of a female and sent images of child's genitalia in order to convince others to send similar material back to him. Toney never succeeded in actually receiving images from his targeted victims *(*17-03135-01-CR-SW-SRB, D.E. 21). In this case, Cuddihe contacted children directly and successfully received numerous images of child pornography. To avoid sentencing disparity, the Government recommends that Cuddihe be sentenced to 360 months.

### 5. Balancing of All § 3553(a) Factors

A 360 month sentence and lifetime supervision, while significant, is appropriate for this case. Given Cuddihe's egregious conduct in this case, as well as the need to protect the public, a lengthy prison sentence and long is demanded.

12

C.  *Recommended Sentence for Monetary Penalties*

Due to Cuddihe's inability to pay, the Government is not advocating that a fine be imposed. However, the $100 Special Assessment per count is mandatory and, as a result, $200 must be paid in full by Cuddihe no later than the day of sentencing.

D.  *Restitution*

In addition to any other civil or criminal penalty authorized by law, the Court shall order restitution for this particular offense. 18 U.S.C. § 2259(a)(4)(A). Additionally, "A court may not decline to issue an order under this section because of (i) the economic circumstances of the defendant; or (ii) the fact a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(B). Both parties stipulate and agree to the $3,000 restitution requested by FV3's mother.

## IV.  CONCLUSION

The Government respectfully suggests that a sentence of 360 months constitutes a sentence sufficient, but not greater than necessary, to achieve justice.

                                        Respectfully submitted,

                                        **Timothy A. Garrison**
                                        United States Attorney

By            /S/

                                        **Ashley S. Turner**
                                        Assistant United States Attorney
                                        Missouri Bar No. 62314

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on April 30, 2019, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to current counsel of record.

/S/
**Ashley S. Turner**
Assistant United States Attorney