```
 1                IN THE UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF MISSOURI
 2                         CENTRAL DIVISION

 3
     UNITED STATES OF AMERICA,          )
 4                                      )
                       Plaintiff,       ) Case No.
 5            vs.                       ) 17-CR-04091-SRB
                                        )
 6   BRANDON DAVID CUDDIHE,             )
                                        )
 7                     Defendant.       )

 8

 9
                         SENTENCING HEARING
10           BEFORE THE HONORABLE STEPHEN R. BOUGH
                    THURSDAY, MAY 9, 2019
11                JEFFERSON CITY, MISSOURI

12

13                          APPEARANCES

14   For the Plaintiff:        MS. ASHLEY S. TURNER
                                United States Attorney's Office
15                              80 Lafayette Street, Suite 2100
                                Jefferson City, Missouri 65101
16
     For the Defendant:        MR. BRADY D. WIMER
17                              Abbott & Wimer LLC
                                555 North Route B
18                              Hallsville, Missouri 65255

19

20

21

22            Gayle M. Wambolt, RMR, CRR
             U.S. Court Reporter, Room 7552
23         Charles Evans Whittaker Courthouse
                 400 East Ninth Street
24         Kansas City, MO 64106 (816) 512-5641

25
                                 1
```

```
 1                    THURSDAY, MAY 9, 2019
 2              THE COURT:  We're here on the case of United States
 3   of America v. Brandon Cuddihe.  Is that how you pronounce
 4   that?
 5              THE DEFENDANT:  Cuddihe.
 6              THE COURT:  Cuddihe.  17-4091.  May I have
 7   appearances by the parties, please.
 8              MS. TURNER:  Ashley Turner for the United States.
 9              THE COURT:  Ms. Turner.
10              MR. WIMER:  Brady Wimer for Mr. Cuddihe, Your Honor.
11              THE COURT:  Mr. Wimer.
12              Ms. Turner, ma'am, have you had an opportunity to
13   review the presentence report and make any objections?
14              MS. TURNER:  I have, and the government has no
15   objections.
16              THE COURT:  And same question for you, Mr. Wimer.
17              MR. WIMER:  We have no objections either, Your
18   Honor.
19              THE COURT:  Very good.  Let me ask you some
20   questions, sir.
21              Sir, have you had an opportunity to review the
22   presentence report?
23              THE DEFENDANT:  Yes, Your Honor.
24              THE COURT:  And have you had an opportunity to
25   discuss the presentence report with your lawyer?
                                 2
```

```
 1                 THE DEFENDANT:  Yes, Your Honor.
 2                 THE COURT:  Is there anything in the PSR that you
 3     believe is incorrect or wrong?
 4                 THE DEFENDANT:  No, Your Honor.
 5                 THE COURT:  Very good.  You may be seated.  Thank
 6     you.
 7                 Total offense level is 43, criminal history category
 8     of 1 resulting in a guideline range of 720 months basically
 9     with no less than 15 and no more than 30 on both of the two
10     counts, Count 1 and Count 2.
11                 Does everybody agree that's what we're talking
12     about?
13                 MS. TURNER:  Yes, Your Honor.
14                 MR. WIMER:  Yes, that's accurate.
15                 THE COURT:  Let me tell you what I've read so that
16     we know we're all on the same page.  I've read the sentencing
17     memoranda that have been provided by the parties, and I read
18     the letters that were submitted by the defense, including a
19     letter -- handwritten letter from the defendant.
20                 I understand we're going to have some evidence from
21     the Facebook post; is that right, Ms. Turner?
22                 MS. TURNER:  Yes, briefly.
23                 THE COURT:  Very good.  For your evidence and your
24     recommendation.
25                 MS. TURNER:  Thank you, Judge.
                                  3
```

1                 Your Honor, as noted in our sentencing memorandum,
2      we are recommending a total of 360 months on Count 1 and 2 to
3      be served concurrently with one another.  The reason why we're
4      asking for such a high sentence is, frankly, the number of
5      victims that this defendant has victimized is something that
6      is not what we usually see in these types of cases and not
7      what we usually see when we're before you dealing with a
8      production of child pornography case.
9                 One thing that the government was particularly
10     concerned about, and we're not saying that Mr. Cuddihe is not
11     entitled to his three-level reduction for acceptance of
12     responsibility because we read the letters.  We've read how he
13     has interacted with his family members and how his fiance has
14     remained supportive.
15                However, the government is concerned that
16     Mr. Cuddihe has not shown that he appreciates the gravity of
17     what he has done and is not owning up to the reasoning as to
18     why he committed these offenses.  I have read the forensic
19     psychological evaluation, and one thing that is concerning is
20     Mr. Cuddihe seems to create an excuse as to why he conducted
21     his -- why his conduct was the way it was.  He reinforced that
22     excuse when he wrote his letter to this court.
23                There were probably over 2,000 pages of the Hannah
24     Richards' fake profile that Mr. Cuddihe utilized to victimize
25     at least a dozen known minor victims, and there were dozens
                                    4

1  more that we couldn't identify but appeared through the text
2  messages and through the pictures that were sent to be a minor
3  or at least representing themselves to be a minor.
4          THE COURT:  What was the timeframe of that expanse?
5          MS. TURNER:  The timeframe that we're able to see
6  from the Facebook, the earliest messages were in May, but it
7  seems that the -- of 2016.  But it seems that Mr. Cuddihe
8  really ramps up, and from July of 2016 until December of 2016
9  when he was caught by female victim two's mother, that's the
10 time period that he was communicating specifically to minors
11 in a sexual manner.  And that's where the excerpts come in.
12         There's some communications in July of 2016 with BM,
13 who was 13 at the time and 14 when she was interviewed by the
14 FBI in New York.  I wanted to show -- this is just one excerpt
15 of hundreds of pages to show that this was more than what
16 Mr. Cuddihe represented to the psychologist during the
17 forensic examination.
18         There's discussion of specifically requesting
19 photographs that don't have to do with defecation or urination
20 and also indication that Mr. Cuddihe is masturbating at the
21 time when he's talking to her.  That is Government's Exhibit
22 2.
23         I also have an excerpt from female victim two's
24 conversation.  I wanted to show the type of grooming process
25 that the defendant went through in order to gain these

5

Gayle M. Wambolt, CCR No. 462
Registered Merit Reporter

Case 2:17-cr-04091-SRB   Document 57   Filed 06/11/19   Page 5 of 17

children's trust, and I would like to remind the court that female victim two was ten years old at the time he was talking to her.

He says things like, OMG, I love you and will you be my girlfriend. A ten-year-old child, first of all, cannot fully or even scratch the surface of understanding sexuality in the way that the defendant was using her in order to satisfy his sexual needs, and, second, to play with these children's emotions and to get into their heads.

One thing I think -- I put this in my sentencing memorandum is that these children did not know they were talking to an adult male. They believed they were talking to a peer. They believed this was someone they could trust. They had no idea they were being exploited. Once they became aware of that exploitation, I just can't even imagine what that would feel like when you think that you're talking to a trusted friend or another child and then find out that it's really a grown man satisfying his sexual needs.

So I'd like to show the court, if I may approach, Government's Exhibits 1 and 2, and I have shown them to counsel.

MR. WIMER: No objection.

THE COURT: 1 and 2 are admitted.

Ms. Turner, what evidence do you have of distribution?

6

1          MS. TURNER: Your Honor, specifically -- well, as
2     with some of the counts that were dismissed, they involve the
3     distribution of child pornography.  Mr. Cuddihe, when acting
4     as if he were Hannah Richards, portrayed himself as either a
5     13-year-old, 14-year-old, or 16-year-old depending on the age
6     of the child that he was exploiting, and he would send images
7     -- pornographic images that looked like self-produced images
8     from an age -- that was consistent with the age that he was
9     portraying himself.
10          So in the situation with FB2, he sent a video of a
11     young girl defecating to kind of try to encourage female
12     victim two to produce a video.  Female victim two relied on
13     that and did end up producing a video of her urinating on the
14     floor in addition to multiple other pictures of her vaginal
15     area, her breasts.  In the excerpt -- I'm not sure if it's in
16     the excerpt I sent you, but at least with BM, he asked the
17     child to put her legs over her head and take a picture of her
18     vagina and her anus.
19          Also one of the victims was K. R., and that was one
20     of the victims that was not one of the charged victims, but
21     was a victim that was interviewed by the FBI.  Mr. Cuddihe
22     took her identity.  K. R. sent a picture of her breasts and a
23     picture of her in underwear.  While this would not meet the
24     definition of child pornography, he did assume this child's
25     identity who, I believe, was 14 at the time.  She was a very

7

Gayle M. Wambolt, CCR No. 462
Registered Merit Reporter

Case 2:17-cr-04091-SRB   Document 57   Filed 06/11/19   Page 7 of 17

attractive young woman, and he sent that picture to 17 other individuals in order to make them feel more comfortable kind of like I'll show you yours, you show me mine type situation.

Otherwise, in Mr. Cuddihe's interview with FBI agents, he explained that he -- besides the picture of K. R., he would kind of go to amateur pornography sites, find pictures of children that he believed were under age and would basically hold himself out to be that child. So that was his MO.

He would go on a Facebook -- go on Facebook, try to friend a bunch of people on a friends list, make it look like he was friends with a child's friends, and start personal messaging them and say, Hey, I think you're cute, let's be lesbians together. And as noted, some of the victims were as young as ten years old. Or would say I'm bisexual, let's experiment, and then would assume the identity of a young female and exchange pictures. So very disturbing behavior and was very prolific.

I did also -- I know that risk -- potential risk and future risk is something, one of the things that the court needs to weigh, and I know that the forensic psychological evaluation talks about Mr. Cuddihe not technically being a pedophile. The DSM-V basically shows that over a period of at least six months, recurrent, intent sexually arousing fantasies, sexual urges, or behaviors involving sexual

activity with prepubescent child or children, the person has acted on these urges or the sexual urges or fantasies cause marked distress and interpersonal difficulty and the person is at least 16 years and at least five years older than the child or children in criterion A.  We know for a fact that beginning in July, he was talking with young children up until December of 2016.  The defendant admits the only reason he stopped these communications was because he was caught and was afraid of getting in trouble.  We have no way of knowing whether he continued to have these fantasies or urges.

I will submit to the court even if he is not clinically diagnosed as a pedophile, the alternative explanation he has given is just as disturbing because he has had this sexual need and desire that is so intense, that he went out and victimized dozens of children without any consideration that they were real children with real feelings who were really being traumatized, and he was doing this for his own sexual satisfaction.

I find that just as disturbing as whether or not he's a pedophile, because he intentionally victimized children.  So I find that he is a risk.  I find that this is just incredibly disturbing behavior that absolutely needs to be punished.

While he may be remorseful, the amount of children that he has affected, and it may come up and it may -- we

9

1  don't know how much it's affecting their lives.  It's one of
2  those things that they're always going to know for their
3  entire lives that they were exploited and victimized.
4  Sometimes being remorseful isn't enough, and I think the
5  amount of children, the amount of victims here justifies --
6  the nature of his conduct justifies the 30-year sentence that
7  the government is asking for.
8           THE COURT:  Thank you.
9           MS. TURNER:  Thank you.
10          MR. WIMER:  Thank you, Judge.
11          Judge, I don't think any of us would disagree,
12 including my client, that what happened in this case was, you
13 know, completely unacceptable to anyone in society.  I've had
14 this case for a while, gone through the evidence, know it
15 pretty well, and it's even troubling to go through when you're
16 discussing that with the client, some of the things that
17 transpired here.
18          I don't necessarily agree with the government's
19 position that he hasn't accepted responsibility.  Whatever his
20 -- what he thinks might be the genesis for what started this
21 behavior, I guess that's up for debate, but I think in his
22 letter to the court, he did express remorse and is sincere
23 about it.  We've had enough discussions to realize what
24 happened here was completely unacceptable.
25          He understands -- I don't think he understood at the

10

1  time, which in a lot of criminal events, a lot of people don't
2  understand the potential ramifications of their behavior at
3  the time they're doing it, and obviously he understands that
4  now, has admitted to all the conduct, apologized for all the
5  conduct, and understands that he's going to have to serve
6  probably a lengthy sentence for the conduct.
7             I requested -- well, the statute itself, Judge, is
8  inherently very firm with people, even first-time offenders.
9  This is a guy with no criminal history, no real predisposition
10 to this type of behavior.  Apparently he was obviously
11 working, got into drinking, and was -- just got completely,
12 completely out of control after he started getting responses
13 from these people.  Not that that's any sort of a
14 justification, it's not, but it just sort of spiraled into a
15 complete disaster, not only for himself, but, I mean, all the
16 people that he contacted.  And we know there were a lot.
17            I think that's probably the crux of this case and I
18 think the biggest concern.  I understand the government's
19 position is truly the amount of people that he ended up
20 contacting that, you know, that they found evidence of, and he
21 understands that now.  Not so much at the time.
22            But I requested the court impose the 180-month
23 minimum on both counts concurrent.  He's going to be late
24 forties if he is released on that.  He's going to have time to
25 engage in programs and corrective behavior while he's

11

1  incarcerated.  That statute is designed to punish people
2  harshly, even first-time offenders, people with no history.
3          He pled guilty to, you know, counts that carry a
4  15-year mandatory minimum straight up.  Anything over and
5  above that was reserved for whatever the court thinks, you
6  know, the offense merits.
7          I did go back in my memo, pulled about ten cases or
8  so over the last couple of years where the average sentence
9  was roughly around 19 years with varying degrees of conduct.
10 Some were just contacting people such as he was doing.  Some
11 involved physical contact, sexual abuse.  There's a varying
12 nature of circumstances regarding child pornography cases or
13 sexual abuse cases.
14         In his case I pointed out a few of the things that
15 did not happen.  Not to minimize his conduct but there was no
16 enticement to meet people or physical contact or anything of
17 that nature.  He just went completely off the reservation in
18 contacting these people and is here today because of it and is
19 not going home any time soon because of it, and he's aware of
20 that.  I think he's accepted responsibility and is going to
21 deal with whatever the court imposes on him.
22         I asked him if he wanted to make a statement, but he
23 said that he was just going to stand basically on what he
24 wrote in his letter to the court and didn't want to belabor
25 the point, repeat everything.  So I think I've said my piece,

12

and we're ready to move forward.

THE COURT: Mr. Cuddihe, would you join him up here at the podium.

THE DEFENDANT: Yes, sir.

THE COURT: Sir, I need to ask you as well, make sure you know you have the right to tell the court anything you want. I have read your letter, but I need to give you that option.

THE DEFENDANT: Yes, Your Honor. I understand that.

THE COURT: Very good. You choose not to make a statement, just rely upon your letter?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, pursuant to 18 U.S.C., 3553, this court is required to impose a sentence that is sufficient but not greater than necessary to comply with the provisions of that statute. I've considered the advisory guidelines. I've considered the 3553 factors.

We've talked pretty extensively in this hearing about the nature and circumstances of your offense. By all accounts, they're an affront to all humanity. The young girls that you decided to prey upon are perfect and innocent and worthy of protection by every human on the face of the Earth. That's what we as humans, we as mammals do is protect the young.

I read your letter. I know you mentioned your

13

1    remorse for the victims.  I think what's so surprising about
        2    this crime, I understand your argument that you were working
        3    hard in Florida, and by all the letters, you're a hard worker,
        4    but you would go to your hotel room and you'd get drunk and
        5    you'd do these things.
        6            But all of these interactions, and I understand
        7    there's something about a screen that separates us from our
        8    humanity, but you're interacting and can actually see pictures
        9    of these perfect, innocent, little people.  And so it's not
       10    like a blog.  It's not just an email.  There are little girls
       11    living out your sexual fantasy, and I tell you one thing I
       12    just don't believe.  There's enough weirdness out in the world
       13    and there's something for everybody that there's not -- wasn't
       14    an adult woman who would satisfy those desires if those were
       15    truly your desires.  In my mind you're targeting underage
       16    children for a reason, either because they're more easily
       17    manipulated, which you did really good at, or that was part of
       18    your fantasy.
       19            So those are the nature and circumstances of the
       20    offense, and like almost everyone who comes before us on a
       21    child pornography case, you have a criminal history category
       22    1, which means nothing.  You've done nothing criminal in your
       23    past.  These letters are always helpful because they show a
       24    whole other side to a human, and we all have that line that
       25    goes through every human heart, either good or bad.  There's

                                       14

1    obviously some wonderful things about you.
2              I also wonder how you got so off path given the
3    large amount of people who obviously love you and support you
4    and would probably do anything for you if you had only asked.
5    So now we're left with me having to come up with a sentence to
6    reflect the seriousness of the offense and promote respect for
7    the law, and that's where for me the guidelines are important
8    in a case like this.
9              The guidelines are designed to tell us here's what a
10   sentence normally should be within and a range of that,
11   because, especially in child pornography cases, our natural
12   human inclination is not mercy in any way.  When I think of
13   those young ladies who will eternally have that kind of in
14   their history of who they are and what they experienced,
15   there's nothing I can do to give justice.  There's nothing I
16   can do.  Those young ladies for the rest of their life are
17   going to be carrying that burden.
18              It's the judgment of this court that the defendant
19   is sentenced to the Bureau of Prisons for 360 months on each
20   count to run concurrent.  I find that you do not have the
21   means to pay a fine and waive any fine as required by law,
22   order a special assessment in the amount of $200, 30 years of
23   supervised release to follow.
24              Is there any dispute on the $3,000 request for
25   restitution?

Gayle M. Wambolt, CCR No. 462
Registered Merit Reporter

1       MR. WIMER:  No.  We stipulate to that, Judge.
2       THE COURT:  $3,000 in restitution.  Waive the JVTA
3  special assessment.
4       While on supervised release, you shall comply with
5  all standard conditions of supervised release that have been
6  adopted by this court as well as the special and mandatory
7  conditions of supervision as set forth in part D of the
8  presentence report.
9       To the extent that you've not waived your right to
10 appeal this judgment and sentence pursuant to the plea
11 agreement you've entered in this case, you have 14 days from
12 the entry of judgment in your case to file a notice of appeal.
13 If you do not file a notice of appeal within 14 days of the
14 date of the judgment, you will forever lose your right to
15 appeal.  If you cannot afford to file a motion to appeal, you
16 can file a motion to proceed in forma pauperis.  If you so
17 request, the clerk of the court shall immediately prepare and
18 file a notice of appeal on your behalf.
19       Anything additional from the government?
20       MS. TURNER:  Yes, Your Honor.  The government would
21 dismiss Counts 3 and 7 of the indictment -- 3 through 7.
22       THE COURT:  That will be granted.
23       Anything additional from the defense?
24       MR. WIMER:  No.
25       THE PROBATION OFFICER:  Your Honor, if I may, the

16

```
 1  probation office presented a recommendation he be placed at a
 2  BOP facility that has the Sexual Offender Treatment Program.
 3            THE COURT:  I'll make that recommendation.
 4            THE PROBATION OFFICER:  Thank you, Judge.
 5            THE COURT:  Thank you.  We'll be in recess.
 6                * * * * * * * * * *
 7                REPORTER'S CERTIFICATE
 8
 9       I certify that the foregoing pages are a correct
10  transcript from the record of proceedings in the
11  above-entitled matter.
12
13  _____      _____
14     Date              Registered Merit Reporter
15
16
17
18
19
20
21
22
23
24
25
```

17

Gayle M. Wambolt, CCR No. 462
Registered Merit Reporter

Case 2:17-cr-04091-SRB   Document 57   Filed 06/11/19   Page 17 of 17