**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Case No. 17-04091-01-CR-SRB** |
| | ) | |
| **Plaintiff,** | ) | **Jefferson City, Missouri** |
| | ) | **October 16, 2018** |
| **v.** | ) | |
| | ) | |
| **BRANDON DAVID CUDDIHE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**TRANSCRIPT OF HEARING ON CHANGE OF PLEA
BEFORE THE HONORABLE WILLIE J. EPPS, JR.
UNITED STATES MAGISTRATE JUDGE**

APPEARANCES:

For the Plaintiff:          Ms. Ashley S. Turner
                            Assistant United States Attorney
                            80 Lafayette St., Ste. 2100
                            Jefferson City, MO 65101
                            (573) 634-8214

For the Defendant:          Mr. Brady D. Wimer
                            555 North Route B
                            Hallsville, MO  65255
                            (573) 881-4750


Court Audio Operator:       Ms. Jackie Price

Transcribed by:             Rapid Transcript
                            Lissa C. Whittaker
                            1001 West 65th Street
                            Kansas City, MO  64113
                            (816) 914-3613

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1          (Court in Session at 11:31 a.m.)

2          THE COURT:  Our case number is 17-CR-4091.  May I have

3     the appearance of counsel?

4          MS. TURNER:  Yes, Your Honor.  Ashley Turner for the

5     United States.

6          THE COURT:  Good morning.

7          MR. WIMER:  Brady Wimer with Mr. Cuddihe, Your Honor.

8          THE COURT:  Good morning again, sir.  And good morning

9     to you, Mr. Cuddihe.

10         MR. CUDDIHE:  Good morning.

11         THE COURT:  We're here pursuant to a consent form that

12    was signed on October 12th by the defendant and filed on October

13    14th in ECF.  And under local rules that consent form allows me

14    to take felony guilty pleas and, thereafter, make a Report and

15    Recommendation for the District Judge.  The Court has been

16    advised that there will be a plea of guilty to Count One and

17    Count Two of the Indictment, which charges attempted production

18    of child pornography in violation of 18 U.S.C. Section 2251(a).

19    Is that correct, Mr. Wimer?

20         MR. WIMER:  That is correct, Your Honor.

21         THE COURT:  Okay.  Mr. Cuddihe, before accepting your

22    guilty plea there are a number of questions the Court must ask to

23    ensure that it's a valid plea.  If you don't understand a

24    question of mine, just ask me to repeat it.  If you need to speak

25    with your counsel, Mr. Wimer, who is seated beside you, please do

1  so.  Consult with him and then answer my question.  You may

2  remain seated throughout these proceedings.  But at this time to

3  the best of your ability, could you raise your right hand to be

4  sworn?

5          BRANDON DAVID CUDDIHE, DEFENDANT, SWORN

6          THE COURT:  Thank you.  Please state your full name.

7          MR. CUDDIHE:  Brandon David Cuddihe.

8          THE COURT:  Mr. Cuddihe, where were you born?

9          MR. CUDDIHE:  Vestal, New York.

10         THE COURT:  How old are you?

11         MR. CUDDIHE:  Thirty-one.

12         THE COURT:  Where did you attend high school?

13         MR. CUDDIHE:  Vestal Senior High School, Your Honor.

14         THE COURT:  Did you graduate?

15         MR. CUDDIHE:  No, I did not, Your Honor.

16         THE COURT:  What was the last year you attended that

17 high school?

18         MR. CUDDIHE:  I left in 11th grade and then I got my

19 GED.

20         THE COURT:  Do you know what year you were in the 11th

21 grade at that high school?

22         MR. CUDDIHE:  I believe it's 2003, Your Honor.

23         THE COURT:  What year did you receive your GED?

24         MR. CUDDIHE:  I believe it was 2005.

25         THE COURT:  Have you been treated recently for any

1  mental illness?

2          MR. CUDDIHE:  No, Your Honor.

3          THE COURT:  Have you been treated recently for an

4  addiction to narcotic drugs of any kind?

5          MR. CUDDIHE:  No, Your Honor.

6          THE COURT:  Have you recently been under the care of a

7  psychiatrist?

8          MR. CUDDIHE:  No, Your Honor.

9          THE COURT:  As you sit here this morning, are you under

10  the influence of any drugs?

11          MR. CUDDIHE:  No, Your Honor.

12          THE COURT:  Are you under the influence of any

13  medication that could affect your ability to think clearly?

14          MR. CUDDIHE:  No, Your Honor.

15          THE COURT:  Are you under the influence of any alcohol?

16          MR. CUDDIHE:  No, Your Honor.

17          THE COURT:  Do you understand what's happening here

18  today?

19          MR. CUDDIHE:  Yes, Your Honor.

20          THE COURT:  Does either counsel have any doubt as to Mr.

21  Cuddihe's competence to plead today?

22          MS. TURNER:  No, Your Honor.

23          MR. WIMER:  No, Your Honor.

24          THE COURT:  Based on Mr. Cuddihe's responses to my

25  questions, my own personal observations of the defendant, and

1  counsel's representations, I do find that the defendant is

2  competent to understand these proceedings and to enter a knowing

3  plea.  Mr. Cuddihe, are you satisfied with Mr. Wimer as your

4  attorney?

5          MR. CUDDIHE:  Yes, Your Honor.

6          THE COURT:  Are you fully satisfied with the counsel

7  representation and advice that he has given to you in this case?

8          MR. CUDDIHE:  Yes, Your Honor.

9          THE COURT:  Has he done everything you've asked of him?

10         MR. CUDDIHE:  Yes, has.

11         THE COURT:  Let's talk about the rights you waive by

12 pleading guilty.  Do you understand you're waiving your right to

13 a jury trial?

14         MR. CUDDIHE:  Yes, Your Honor.

15         THE COURT:  Do you understand you're waiving your right

16 to confront witnesses Ms. Turner would have called on behalf of

17 the United States at trial?

18         MR. CUDDIHE:  Yes.

19         THE COURT:  Do you understand you're waiving your right

20 to call witnesses in your own defense?

21         MR. CUDDIHE:  Yes.

22         THE COURT:  Do you understand you are waiving your right

23 to have taken the witness stand if you had chosen to do so?

24         MR. CUDDIHE:  Yes.

25         THE COURT:  Do you understand you're waiving your right

1  to have Mr. Wimer fight for you throughout the trial process?

2          MR. CUDDIHE:  Yes, Your Honor.

3          THE COURT:  Having discussed these rights with you, do

4  you still wish to proceed toward a guilty plea?

5          MR. CUDDIHE:  Yes, I do, Your Honor.

6          THE COURT:  Do you have a copy of the Indictment in

7  front of you?

8          MR. CUDDIHE:  I do.

9          THE COURT:  Ms. Turner, would you explain precisely and

10 in a meaningful manner the essential elements of the offenses

11 charged to which Mr. Cuddihe intends to plead guilty?  And if you

12 could also give us the range of punishment available for those

13 two counts.

14          MS. TURNER:  I can, Judge.  Mr. Cuddihe is pleading

15 guilty to Counts One and Two, which are attempted production of

16 child pornography.  In each of those counts -- well, in Count One

17 we would need to prove that on or about December 3rd of 2016,

18 that the conduct occurred within Pettis County in the Western

19 District of Missouri.  Now, the defendant, Brandon David Cuddihe,

20 attempted to employ, use, persuade, induce, entice and coerce a

21 minor, FV1, and that he would be doing that to engage -- trying

22 to convince FV1 to engage in any sexual explicit conduct for the

23 purpose of producing a visual depiction of such conduct, which

24 visual depiction was transported in interstate commerce.  Count

25 Two has the same elements, however, we would need to prove that

1  it was on or about December 5th of 2016, and that it involved a

2  different and distinct minor, Female Victim 2.  The punishment

3  range for Counts One and Two is not less than 15 years in

4  imprisonment, not more than 30 years imprisonment, not more than

5  a $250,000 fine, not less than five years supervised release and

6  not more than life supervised release, and it is a Class B

7  felony.  There is also a $100 special assessment on each count,

8  so that would be a total of $200.

9          THE COURT:  Thank you, Ms. Turner.  Mr. Cuddihe, do you

10 understand the elements for those two charges?

11         MR. CUDDIHE:  Yes, I do, Your Honor.

12         THE COURT:  Do you understand the maximum and minimum

13 penalties for those two?

14         MR. CUDDIHE:  Yes, I do.

15         THE COURT:  Do you understand that if you violate

16 conditions of supervised release you can be given additional time

17 in prison?

18         MR. CUDDIHE:  Yes, I do, Your Honor.

19         THE COURT:  Is there a signed Plea Agreement in this

20 case?

21         MR. CUDDIHE:  Yes, there is, Your Honor.

22         THE COURT:  Okay.

23         MS. TURNER:  But that's the only signed copy.

24         MR. WIMER:  It's the only signed copy?

25         MS. TURNER:  Uh-huh.  Do you need another copy to look

1  at?

2         MR. WIMER:  That's -- yeah.  That's fine.

3         MS. TURNER:  Okay.

4                    (Off Record Talking)

5         THE COURT:  Thank you.  Mr. Cuddihe, I've had presented

6  to me a 17-page document captioned "Plea Agreement."  On page 17,

7  it appears that you have signed this document along with your

8  counsel, Mr. Wimer.  Mr. Cuddihe, did you indeed sign this Plea

9  Agreement on page 17 at the top?

10        MR. CUDDIHE:  Yes, Your Honor.

11        THE COURT:  Okay.  Did you get a chance to read the Plea

12 Agreement before you signed it?

13        MR. CUDDIHE:  Yes, I did.

14        THE COURT:  Did you get a chance to discuss the contents

15 of the Plea Agreement with your lawyer before you signed it?

16        MR. CUDDIHE:  Yes, I did.

17        THE COURT:  Was Mr. Wimer able to answer all the

18 questions you have about the terms and conditions of that

19 agreement?

20        MR. CUDDIHE:  Yes, he was, Your Honor.

21        THE COURT:  As you sit here this morning do you feel you

22 understand all the terms contained in that agreement?

23        MR. CUDDIHE:  Yes, I do, Your Honor.

24        THE COURT:  Do you understand that the Plea Agreement is

25 a contract between you and the prosecution?

1          MR. CUDDIHE:  Yes, Your Honor.

2          THE COURT:  Do you understand that the court is not a

3    party to your Plea Agreement?

4          MR. CUDDIHE:  Yes, Your Honor.

5          THE COURT:  And do you understand that, therefore, the

6    court is not bound by this agreement?

7          MR. CUDDIHE:  Yes, Your Honor.

8          THE COURT:  Do you understand that the court could

9    reject some of the recommendations contained in this agreement

10   and not allow you to withdraw your guilty plea?

11         MR. CUDDIHE:  Yes, Your Honor.

12         THE COURT:  Did anyone threaten you in any way to get

13   you to sign that Plea Agreement?

14         MR. CUDDIHE:  No, Your Honor.

15         THE COURT:  Mr. Wimer, were all formal plea offers by

16   the Government conveyed to the defendant?

17         MR. WIMER:  Yes, Your Honor.

18         THE COURT:  I find this Plea Agreement to be in proper

19   form and will make sure it becomes part of the record.  Mr.

20   Cuddihe, let me talk about some of the valuable civil rights you

21   will lose by being adjudged guilty.  Do you understand you could

22   lose your right to vote?

23         MR. CUDDIHE:  Yes, Your Honor.

24         THE COURT:  Your right to hold public office?

25         MR. CUDDIHE:  Yes.

1          THE COURT:  Your right to serve on a jury?

2          MR. CUDDIHE:  Yes.

3          THE COURT:  And your right to possess any kind of

4    firearm?

5          MR. CUDDIHE:  Yes.

6          THE COURT:  Sentencing Guidelines, have you had enough

7    time to talk to Mr. Wimer about how the guidelines affect your

8    case?

9          MR. CUDDIHE:  Yes, I have, Your Honor.

10          THE COURT:  Do you have a good understanding, at least

11    in your mind, of how you think the guidelines will affect your

12    case?

13          MR. CUDDIHE:  Yes, I do, Your Honor.

14          THE COURT:  Do you understand that the court will not be

15    able to determine your guideline range until after the

16    Presentence Investigation Report has been completed?

17          MR. CUDDIHE:  Yes, Your Honor.

18          THE COURT:  Do you also understand that after your

19    initial advisory guideline range has been determined, the court

20    has authority, in some circumstances, to vary upward or downward?

21          MR. CUDDIHE:  Yes, Your Honor.

22          THE COURT:  And do you understand that if the court

23    varies upward, for instance, you may not be allowed to withdraw

24    your guilty plea?

25          MR. CUDDIHE:  Yes, Your Honor.

1      THE COURT:  Do you also understand that the concept of

2 parole has been abolished in the federal system.  And if you are

3 sentenced to prison, you will not be released on parole?

4      MR. CUDDIHE:  Yes, sir.  Yes, Your Honor.

5      THE COURT:  Ms. Turner, please tell us what evidence you

6 would put on if this case had gone to trial.

7      MS. TURNER:  Your Honor, I'm on page 2 of the Plea

8 Agreement, which is Subsection (3).  Before I read the factual

9 basis, I did want to make a record that the victims and their

10 mothers were contacted, that the victim's mother for Female

11 Victim 1 did wish to be present, but was unable to get off work.

12      THE COURT:  Okay.  Thank you for letting me know.

13      MS. TURNER:  Okay.  So, what the Government would prove

14 if this should go to trial is that on or about December 5th,

15 2016, a Sedalia Police detective took a complaint from a mother

16 and her ten-year-old daughter, Female Victim 2.  The mother

17 stated that upon awaking up that morning, she checked Female

18 Victim 2's phone and found that Female Victim 2 had been in

19 contact with a girl named Hanna Richards on Facebook and had

20 found that FV2 had sent nude pictures to Hanna Richards.  After

21 reading further into the conversation the mother additionally

22 found where Female Victim 1 and another minor victim -- another

23 minor female, both friends of Female Victim 2, had also been

24 involved.  The girls had all spent the night together over the

25 weekend.  The detective and Female Victim 2 had her mother log

1 into FV2's Facebook account at that time.  The messages between

2 FV2 and Hanna Richards began on December 3rd of 2016.  The

3 detective was able to view nude images and videos that FV2 sent

4 to Hanna Richards at Richards' request.  Richards purported to be

5 a 14-year-old girl.  The defendant took screenshots of all

6 communications between FV2 and Richards and saved all the videos

7 and images that were sent and received during their conversation.

8 On that same day the detective interviewed FV1 who was also 10

9 years old in the presence of her mother.  During this interview

10 FV1 reported sending and receiving nude images and videos to

11 Hanna Richards via Facebook Messenger.  The detective asked FV1

12 to log into her Facebook account so she could review the

13 conversation.  FV1 and Richards began having a conversation on

14 December 1st, 2016, where Richards also purported to be a 14-

15 year-old girl.  The conversation continued through December 2nd

16 of 2016, and Richards asked FV1 for nude pictures of herself as

17 well as her younger sister.  The detective was able to view nude

18 videos and images of FV1 that she had sent to Richards via

19 Facebook Messenger.  On December 6, 2016, the detective applied

20 for search warrants for Hanna Richards, FV1's and FV2's Facebook

21 accounts.  After looking through those accounts and tracking the

22 IP addresses and going through the normal identification process,

23 they found that Hanna Richards' account actually checked back to

24 Brandon Cuddihe, the defendant in this case.  And I did, just for

25 the record, skip ahead.  There's some of Paragraph 3, or

1 Subsection (3). An FBI special agent interviewed Cuddihe on

2 September 1st, 2017. Cuddihe told the special agent that he has

3 had a Facebook account in his true name, Brandon Cuddihe, for

4 approximately three to four years. Cuddihe also has a Snapchat

5 account and had a Skype account at one point. Cuddihe provided

6 the same cell phone number provided by Hanna Richards to FV1.

7 Cuddihe stated he left his cell phone, a Samsung Galaxy S6, in a

8 cab approximately one year ago in either the spring or summer of

9 2016. Cuddihe stated he did not change his phone number after

10 the phone was lost. Initially, Cuddihe denied knowledge of the

11 Gmail account HannaBear3344@gmail.com or the Facebook account

12 Hanna Richards. Cuddihe stated he began working for Primo Turf

13 in July 2016 and that he travels a lot for his job. Cuddihe

14 traveled to Florida in December of 2016 and June of 2017 for

15 work. When he is home Cuddihe resides with his girlfriend.

16 Cuddihe eventually told the special agent that he originally

17 created the Facebook account with vanity ID Hanna Richards when

18 he was traveling on the road for work and he was bored, lonely,

19 and looking for people to talk to him. Cuddihe stated that while

20 traveling he frequently drank alcohol. Cuddihe stated he has a

21 weird sexual interest that involves girls going to the bathroom

22 and having accidents related to urinating and defecating.

23 Cuddihe stated he attempted to converse online with individuals

24 close to his age about his sexual interests but none were

25 receptive. Cuddihe stated he did not talk to his girlfriend

1   about his sexual interests.  Using the Hanna Richards Facebook

2   account, Cuddihe would pick a random individual to befriend.

3   Cuddihe would go through all of their friends and add a bunch of

4   their friends to his friends list.  If the individual accepted

5   his friend request, then he would begin chatting with them

6   through Facebook Messenger.  Cuddihe initially told the special

7   agent that girls he was chatting with on Facebook Messenger told

8   him they were 16 to 17 years old.  After being shown printouts

9   from the Hanna Richards' Facebook Messenger chats where multiple

10  individuals told Hanna Richards they were 10 to 14 years old,

11  Cuddihe indicated he recalled having those communications.  The

12  special agent showed Cuddihe the chats between Hanna Richards and

13  Female Victim 1, 2 and 3.  Though Cuddihe did not initially

14  recognize the name of the individuals, he recognized the chats as

15  one he engaged with -- engaged in with minor females.  Cuddihe

16  recognized the images within the chats as ones he sent and

17  received while utilizing the Facebook identity of Hanna Richards.

18  Cuddihe stated he obtained the images he sent as Hanna Richards

19  from a website called www.onlyamateur.com.  Cuddihe took

20  screenshots of the images from the website in order to send them

21  to the minor females he chatted with.  Cuddihe engaged in these

22  conversations while he was in Florida for work in December.  So,

23  some examples of the chats for Count One, it was Female Victim 1.

24  On December 3rd, 2016, Hanna Richards states, "Can I see ur boobs

25  baby?"  On December 3rd, 2016, Female Victim 1 says, "Ya."

1  12/3/2016, the Hanna Richards character says, "Video or pic?"

2  Female Victim says, "Which one you'll want?"  The Hanna Richards

3  persona says, "Video baby."  Female Victim 1 says, "Ok."  Hanna

4  Richards persona says, "and ur vagina please."  Female Victim 1,

5  "So naked?"  Hanna Richards, "Yes."  Female Victim 1 sends a

6  video of herself with no clothes on.  Her breasts and vagina are

7  visible.  And for Count Two Cuddihe, as the Hanna Richards

8  persona says, "Can u do a naked video??" on December 4th, 2016.

9  The Hanna Richards persona says, "please baby."  Female Victim 2

10  sends a video depicting her naked breasts and genitals.  On

11  December 5th, 2016, the Hanna Richards persona says, "Ur so

12  sexy."  And on December 5th, 2016, Female Victim 2 says, "I'm

13  tacking a bath."  And that -- the "tacking" was how it was

14  spelled in the text message.

15          THE COURT:  Okay.  Thank you, Ms. Turner.  Mr. Wimer, do

16  you understand you agree that that would have been the

17  Government's evidence if this case had gone to trial?

18          MR. WIMER:  Yes, Your Honor.

19          THE COURT:  Same question to you, Mr. Cuddihe.  Do you

20  agree that that would have been the Government's evidence?

21          MR. CUDDIHE:  Yes, Your Honor.

22          THE COURT:  Did you do, in fact, what Ms. Turner just

23  reported you did?

24          MR. CUDDIHE:  Yes, Your Honor.

25          THE COURT:  Is anyone in any way forcing you to plead

1 guilty today?

2        MR. CUDDIHE:  No, Your Honor.

3        THE COURT:  Has anyone made any promises or assurances

4 to you other than what's in this Plea Agreement to get you to

5 plead guilty?

6        MR. CUDDIHE:  No, Your Honor.

7        THE COURT:  Are you pleading guilty on your own free

8 will?

9        MR. CUDDIHE:  Yes, Your Honor.

10        THE COURT:  Are you pleading guilty because you are, in

11 fact, guilty?

12        MR. CUDDIHE:  Yes, Your Honor.

13        THE COURT:  What is your plea to Counts One and Two of

14 the Indictment?

15        MR. CUDDIHE:  Guilty, Your Honor.

16        THE COURT:  I hereby find there is a factual basis for

17 your plea of guilty.  And, Mr. Cuddihe, since you acknowledge

18 that you are, in fact, guilty as charged in Counts One and Two of

19 the Indictment, since you know your right to trial by jury, since

20 you know the maximum possible punishment, since you are

21 voluntarily pleading guilty, I accept your guilty plea.  The

22 Court will file a Report and Recommendation with the District

23 Judge recommending an entry of judgment on your plea of guilty.

24 At this time the Court is ordering a Presentence Investigation

25 Report be completed on your case.  This will be a very important

1  document that your District Judge will use to determine the best

2  sentence for you.  It's going to be in your best interest to

3  cooperate with the probation officer in furnishing information

4  for that report.  As you know, your sentencing will be set before

5  the Honorable Stephen R. Bough, one of our U.S. District Judges,

6  at a later date.  Please know that once a draft of your

7  Presentence Investigation Report has been completed, you and Mr.

8  Wimer will get a copy and get a chance to review it together, go

9  over it, correct any mistakes that are in the report, object to

10 the report if you need to.  And at your sentencing hearing Judge

11 Bough will make a determination as to whether or not your

12 objections are valid.  I see that you are in custody.  I will

13 order that you remain in custody pending your sentencing hearing.

14 Mr. Wimer, did we cover everything we need to cover with respect

15 to this change of plea hearing?

16         MR. WIMER:  Yes, Your Honor.

17         THE COURT:  Okay.  Ms. Turner, did we cover everything

18 we need to cover?

19         MS. TURNER:  Yes, Your Honor.

20         THE COURT:  Okay.  The Court will note that there is an

21 *ex parte* motion on file that the Court would like to take up with

22 Mr. Cuddihe and Mr. Wimer outside the presence of the prosecutor

23 and the agents and others that are associated with her case.  And

24 so, Ms. Turner, if that's pleasing to you, then if you all could

25 excuse yourselves and we'll have an *ex parte* hearing.

1          (Court Adjourned at 11:51 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7        I certify that the foregoing is a correct transcript from
the electronic sound recording of the proceedings in the above-
8   entitled matter.

9

10              /s/ Lissa C. Whittaker          July 3, 2019
                Signature of Transcriber        Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25